IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **THOMAS D. ARTHUR,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION 08-0441-WS-M |
| ) | |
| **RICHARD ALLEN, Commissioner,** ) | |
| **Alabama Department of Corrections,** ) | |
| *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

**ORDER**

This matter comes before the Court on plaintiff Thomas D. Arthur's Application for a Temporary Restraining Order / Motion for a Preliminary Injunction (doc. 5) filed on the morning of July 29, 2008. The Motion has been briefed on an expedited basis, and the Court has carefully reviewed and fully considered Defendants' Objection to Arthur's Motion and Motion to Dismiss Lawsuit (doc. 9) filed late in the day on July 29, 2008, as well as Plaintiff's reply memorandum (doc. 10) filed on the morning of July 30, 2008. Plaintiff's application for emergency injunctive relief and defendants' motion to dismiss are now ripe for disposition.[1]

**I.     Background.**

Thomas D. Arthur is an Alabama death row inmate who was sentenced to death in 1992 and whose conviction and sentence became final when they were affirmed by Alabama appellate courts on direct appeal in 1997. *See Arthur v. King*, 500 F.3d 1335, 1337 (11th Cir. 2007). He has known since no later than 1997 that the State of Alabama intends to execute him. He has long been aware that the State intends to perform an autopsy on his body after the execution is carried out. By and through his *pro bono* legal team, Arthur has initiated numerous legal

---

[1] The Motions to Appear Pro Hac Vice (docs. 2, 3, 4) filed by three members of plaintiff's legal team (Suhana S. Han, Esq., Jordan Toumey Razza, Esq., and Sultana Lily-Rose Bennett, Esq., all of the New York office of Sullivan & Cromwell) contemporaneously with the Application for Temporary Restraining Order are hereby **granted**.

proceedings during the last seven years or more, including petitions for state postconviction relief, petitions for federal habeas corpus relief, and a pair of § 1983 actions challenging the constitutionality of the State's proposed method of execution.  *See id.* at 1337-38 (listing proceedings); *Arthur v. Alabama Department of Corrections*, 2008 WL 2898212, *1 (11th Cir. July 29, 2008).

In the last 10 months, the Alabama Supreme Court has set execution dates for Arthur on three different occasions.  A September 27, 2007 execution setting was stayed by Alabama Governor Bob Riley just hours before it was to occur in order to enable Alabama to implement a modification to its lethal injection protocol.  A subsequent December 6, 2007 execution setting was stayed by the United States Supreme Court with one day to spare pending its ruling on a challenge to Kentucky's method-of-execution protocol in *Baze v. Rees*, --- U.S. ----, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008).  Following the *Baze* decision, on June 30, 2008, the Alabama Supreme Court fixed July 31, 2008 as the new execution date for Arthur.  (Doc. 1, at Exh. A.)[2]

This lawsuit was filed just three days before the latest execution setting, and the instant Application for Temporary Restraining Order was filed just two days before that setting.  In the Complaint (doc. 1), which is brought pursuant to 42 U.S.C. § 1983, Arthur alleges that defendants' contemplated autopsy on his body pursuant to Ala. Code § 36-18-2 violates his First Amendment right to free exercise of religion because the autopsy would contravene his sincerely held religious beliefs.  In an Affidavit appended to the Complaint, Arthur avers that he was christened in the Methodist church as a baby, that he attended Methodist and Baptist church services while growing up, and that he was involved in a church ministry while in prison.  (Arthur Aff., ¶ 3.)  Arthur further avers his belief, based on his reading of the Bible, that his "physical body is a temple and a sacred place" and that "the destruction of the human body is the destruction of God's Temple."  (*Id.*, ¶ 4.)  The Complaint emphasizes that "[t]he present action is not an attempt to stay Mr. Arthur's execution."  (Doc. 1, ¶ 14.)

This is not the first time the Court has been obliged to address an emergency motion filed

---

[2] Although the parties have not notified it of same, the Court takes judicial notice that last night, July 30, 2008, the Alabama Supreme Court entered a stay of Arthur's execution.  That stay affects neither the reasoning nor the result of this Order.

on the eve of an execution date for Arthur seeking to prevent the State of Alabama from performing an autopsy on his body. On September 25, 2007, Arthur's daughter, Sherri Arthur Stone (proceeding nominally on a *pro se* basis, although it was evident that her pleadings were ghostwritten by counsel), filed a § 1983 action in this District Court seeking a temporary restraining order and preliminary and permanent injunctive relief barring the State of Alabama from performing an autopsy on Arthur's body post-execution on the grounds that an autopsy would violate Stone's (not Arthur's) sincerely held religious beliefs. *See Sherri Arthur Stone v. Richard Allen, et al.*, No. 07-0681-WS-M.[3] Given the pronounced similarities in formatting, font, phrasing, and structure between the *Stone* Complaint and the instant Complaint, both appear to have been drafted by the same legal team. Curiously, Arthur was not a party to the *Stone* litigation.[4] On September 25, 2007, the undersigned entered an Order denying Stone's motion for temporary restraining order and preliminary injunction based on her failure to show a substantial likelihood of success on the merits. The September 25 ruling noted the paucity of "authority tending to show that the performance of an autopsy on her father will amount to a cognizable deprivation of her First Amendment rights to the free exercise of her religious beliefs." *Stone v. Allen*, 2007 WL 2807351, *3 (S.D. Ala. Sept. 25, 2007). Two months later, the Court dismissed the *Stone* litigation, granting defendants' motion to dismiss (to which Stone elected not to respond, despite a full and fair opportunity to do so) on the grounds that (1)

---

[3] The *Stone* Complaint was filed just two days prior to the then-scheduled September 27, 2007 execution date for Arthur, forcing the Court to rule on the Motion for Temporary Restraining Order on an emergency basis, without the benefit of complete briefing or the luxury of time to research and analyze the Motion. The parallels between the procedural posture of *Stone* and this action are striking.

[4] Arthur had every opportunity to join the *Stone* action. Indeed, in the Order denying Stone's motion for temporary restraining order, this Court observed as follows: "Had Arthur wished to bring a Free Exercise challenge to the State's autopsy protocols on his own behalf, plaintiff has identified no impediment that would have prevented him from doing so." *Stone v. Allen*, 2007 WL 2807351, *1 n.2 (S.D. Ala. Sept. 25, 2007); *see also Stone v. Allen*, 2007 WL 4209262, *1 (S.D. Ala. Nov. 27, 2007) (noting that Arthur "has never alleged in this case or any other that the performance of an autopsy on his body would infringe upon any of his religious convictions"). Despite this virtual invitation to participate in *Stone*, Arthur never came forward but instead waited until now to advance his Free Exercise Clause claims pertaining to the proposed autopsy.

Stone's conclusory statement that the contemplated autopsy of Arthur's body would violate Stone's unspecified religious beliefs was inadequate under a *Twombly* analysis; (2) the Court's research had failed to reveal any authority recognizing a First Amendment right to dictate the treatment of a parent's body in a manner that accords with the plaintiff's (not the parent's) religious beliefs; and (3) "courts have routinely found that religion-neutral laws of general application do not violate the Free Exercise Clause even when they incidentally burden religious conduct."  *Stone v. Allen*, 2007 WL 4209262, *3 (S.D. Ala. Nov. 27, 2007).  No appeal was taken from that dismissal.

## II.     Analysis.

To be eligible for a temporary restraining order or preliminary injunctive relief under Rule 65, a movant must establish each of the following elements:  (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest.  *See Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005); *Parker v. State Bd. of Pardons and Paroles*, 275 F.3d 1032, 1034-35 (11th Cir. 2001).  Plaintiff has not satisfied this standard.

### *A.     Preliminary Equitable Relief is Precluded by Plaintiff's Inequitable Conduct.*

The Eleventh Circuit has stressed that "[i]njunctive relief is an equitable remedy that is not available as a matter of right."  *Williams v. Allen*, 496 F.3d 1210, 1212 (11th Cir. 2007) (quoting *Grayson v. Allen*, 491 F.3d 1318, 1322 (11th Cir. 2007)).  Indeed, it is black-letter law in this Circuit that "[t]he grant of equitable relief, such as an injunction, is a matter of judicial discretion."  *CNA Financial Corp. v. Brown*, 162 F.3d 1334, 1337 (11th Cir. 1998).  In exercising that discretion, "[i]t is a bedrock principle of courts of equity that they may impose the substantive remedy of injunctive relief *only* when fundamental fairness and justice demand it." *Coral Springs Street Systems, Inc. v. City of Sunrise*, 371 F.3d 1320, 1340 (11th Cir. 2004).  In that regard, a party seeking to avail itself of a federal court's equitable powers must act in good faith, inasmuch as those equitable powers "can never be exerted in behalf of one who has acted fraudulently or who by deceit or any unfair means has gained an advantage."  *Id.* at 1341 (citation omitted); *see also In re Kingsley*, 518 F.3d 874, 878 (11th Cir. 2008) ("one who has acted in bad faith, resorted to trickery and deception, or been guilty of fraud, injustice or

unfairness will appeal in vain to a court of conscience") (citation omitted).  The U.S. Supreme Court has observed that "[c]ourts of equity frequently decline to interfere on behalf of a complainant whose attitude is unconscientious in respect of the matter concerning which it seeks relief."  *National Fire Ins. Co. of Hartford v. Thompson*, 281 U.S. 331, 338, 50 S.Ct. 288, 74 L.Ed. 881 (1930).  The *Grayson* panel gleaned from these fundamental principles a "strong presumption against the grant of dilatory equitable relief."  491 F.3d at 1326; *see also Hill v. McDonough*, 547 U.S. 573, 584-85, 126 S.Ct. 2096, 165 L.Ed.2d 44 (2006) (recognizing that "a number of federal courts have invoked their equitable powers to dismiss suits they saw as speculative or filed too late in the day" and opining that "federal courts can and should protect States from dilatory or speculative suits").  Simply put, equity aids the vigilant, not those who sleep on their rights.  *See Atlanta & St. A.B. Ry. Co. v. Barnes*, 95 F.2d 273, 278 (5th Cir. 1938); *see also Anderson Bros. Corp. v. O'Meara*, 306 F.2d 672, 677 (5th Cir. 1962) (court of equity "will not assist a man whose condition is attributable to the want of due diligence which may be fairly expected from a reasonable person") (citation omitted).

Measured by any reasonable metric, Arthur has been dilatory to an extreme degree in initiating this lawsuit and filing his requests for temporary restraining order and preliminary injunction.  As described *supra*, he has unquestionably been aware of the State's intention to execute him and to perform an autopsy on his body for many years.  He was clearly apprised of his daughter's attempt to block the autopsy via § 1983 lawsuit (apparently prepared by Arthur's very own legal team) filed in this District Court nearly a year ago, yet he elected to remain on the sidelines.  After coming to the brink of execution on multiple occasions in the recent past without articulating any First Amendment concerns over the prospect of a post-execution autopsy, Arthur suddenly invokes the equitable power of this Court, just two days before the scheduled execution, seeking to restrain the State, without a full hearing on the merits, from performing on autopsy on his body.  The timing of this action bears the unmistakable taint of an ambush, an exercise in eleventh-hour gamesmanship with the intent to procure an unfair strategic advantage over defendants.  Such conduct is the very antithesis of the equitable, diligent, good-faith, vigilant conduct required of a litigant seeking equitable relief.

Arthur has never offered any explanation for why he could not have initiated this action earlier, in a manner that would have allowed a full airing and comprehensive resolution of his

First Amendment claims on the merits in advance of the anticipated autopsy.  It is apparent that no valid explanation exists.  Thus, Arthur finds himself demanding emergency injunctive relief from this Court because of his own failure to act in a reasonably prompt fashion to vindicate his rights.  Stated differently, the alleged irreparable harm that will result if a temporary restraining order is not granted in this case is harm of Arthur's own creation.  Had he not slept on his rights for years, had he not waited until the last possible moment to initiate a § 1983 challenge to the contemplated autopsy, Arthur would not be facing a situation where the merits of this dispute cannot be fully and finally decided prior to the scheduled autopsy.

In short, given plaintiff's inordinate and unexplained delay in initiating these proceedings, and the apparent strategic objectives underlying the dilatory timing of this action, the Court finds that Arthur is ineligible for the requested temporary restraining order and preliminary injunction because he has conducted himself in a manner irreconcilable with basic principles of due diligence, good faith, and conscientious enforcement of his rights.  *See generally Hill v. McDonough*, 464 F.3d 1256, 1259 (11th Cir. 2006) ("In light of Hill's actions in this case, which can only be described as dilatory, we join our sister circuits in declining to allow further litigation of a § 1983 case filed essentially on the eve of execution.").  The Court therefore exercises its discretion to **deny** the Application for Temporary Restraining Order and Motion for Preliminary Injunction.

    B.  *This Action is Time-Barred on its Face.*

Even if Arthur's inequitable conduct and lack of diligence in pursuing his First Amendment claims did not warrant the outright denial of his request for emergency injunctive relief, the Court would nonetheless deny the request on the ground that he has failed to establish a substantial likelihood of success on the merits.

"All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought."  *Crowe v. Donald*, 528 F.3d 1290, 1292 (11th Cir. 2008).  In Alabama, that limitations period is two years.  *See, e.g., Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1483 (11th Cir. 1989) ("the two-year limitations period of Ala. Code § 6-2-38(*l*) applies to section 1983 actions in Alabama"); *Hutcherson v. Riley*, 2006 WL 2989214, *5 n.7 (S.D. Ala. Oct. 18, 2006) ("The statute of limitations period for § 1983 claims is determined by reference to the applicable state

law period for personal injury torts, which in Alabama is two years."). Accrual of a § 1983 action under the statute of limitations "occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Wallace v. Kato*, --- U.S. ----,   127 S.Ct. 1091, 1095, 166 L.Ed.2d 973 (2007) (internal quotations and citations omitted).  Thus, the critical question for limitations purposes is whether Arthur could have filed suit and obtained relief more than two years prior to July 28, 2008, the date on which he initiated this action.  Defendants' position is that Arthur's § 1983 claim that an autopsy would interfere with the free exercise of his sincerely held religious beliefs accrued back on January 24, 1992, when he was sentenced to death, and that this § 1983 action is therefore time-barred.

In response, Arthur maintains, with no citations of authority, that traditional accrual principles are inapplicable here because he "seeks injunctive relief against the harm that will be inflicted upon him *in the future*." (Reply (doc. 10), at 3.)  Instead, Arthur continues, again without citing to a single authority from this or any other Circuit, his § 1983 claims relating to the autopsy "should accrue at the time his injury is imminent, which is when he reasonably believes an autopsy will be conducted on his body in violation of his religious beliefs – that is, when the Alabama Supreme Court sets an execution date." (Reply (doc. 10), at 4.)[5]  The problem with this proposed accrual date is twofold.

First, plaintiff's position ignores recent Eleventh Circuit authority concerning the accrual of § 1983 actions for condemned inmates.  These cases have unequivocally rejected the notion, espoused by Arthur here, that where an inmate seeks to enjoin harm that may be inflicted upon him in the future, he may tarry as close to the date of that infliction of harm as he wishes before bringing his action, without running afoul of the applicable limitations period.  In *McNair v. Allen*, 515 F.3d 1168 (11th Cir. 2008), for instance, the Eleventh Circuit examined the analogous

---

[5] In fairness to plaintiff's legal team, the Court recognizes that they had less than 24 hours to research, draft and file their reply brief, leaving precious little time to scour Eleventh Circuit precedents for authorities in support of Arthur's position.  As noted, however, this is a dilemma of plaintiff's own creation.  Had Arthur not waited until the last possible minute before initiating this § 1983 action, the briefing process would not have been so tremendously compressed and there would have been ample time for both the parties and the Court to research and analyze these issues fully, rather than engaging in kneejerk hypotheses or wishful thinking of what the law should be or might be, as plaintiff's counsel do in their reply.

question of when a death-row inmate's constitutional claim relating to the method of execution accrues for limitations purposes.[6] Like Arthur, the *McNair* plaintiff was a condemned inmate seeking an injunction against future harm. The *McNair* panel refused to adopt the plaintiff's contention (similar to Arthur's here) that because the alleged tort had yet to occur, his claim did not accrue until the moment of execution. *McNair* deemed such a time-of-harm accrual principle to have no application "where the ultimate injury is reasonably likely and wholly foreseeable." 515 F.3d at 1174. The court went on to explain, "It is clear a capital litigant may file suit and obtain injunctive relief long before he is executed." *Id.* After detailed analysis of various alternative dates, the *McNair* panel concluded that the appropriate accrual date for a method-of-execution challenge was the date that Alabama's execution protocol became applicable to the plaintiff because by that time "the facts which would support a cause of action should have been apparent to any person with a reasonably prudent regard for his rights." *Id.* at 1177; *see also Crowe*, 528 F.3d at 1293 (holding that method-of-execution challenge accrued for limitations period "when, after direct review of his convictions had been completed, Crowe became subject to the method of lethal injection that he challenges"). A similar conclusion was reached in *Lovett v. Ray*, 327 F.3d 1181 (11th Cir. 2003), where the Eleventh Circuit deemed a § 1983 complaint relating to a change in parole procedures that would not affect the plaintiff until several years in the future to be time-barred because he "knew, or should have known, all of the facts necessary to pursue a cause of action" more than two years before bringing a § 1983 claim seeking prospective injunctive relief. *Id.* at 1182-83.[7]

---

[6] The *McNair* court framed the issue before it as the following: "What does [the Circuit's test for accrual of § 1983 actions] mean as applied to a capital litigant seeking injunctive relief for an injury that has not yet occurred, but can be reasonably anticipated?" 515 F.3d at 1173. Precisely the same question is presented here, albeit with respect to a different type of constitutional injury than the one at issue in *McNair*; therefore, the *McNair* analysis applies with equal force to Arthur's claim.

[7] Plaintiff would marginalize these authorities with a sweep of his hand, broadly asserting that such authorities are unhelpful because none of them "have anything whatsoever to do with autopsies." (Reply (doc. 10), at 3.) It is, of course, true that the Eleventh Circuit appears never to have had occasion to delineate the accrual date for a Free Exercise Clause challenge to an autopsy by a condemned inmate. Nonetheless, binding appellate authority need not be factually on-point to have a bearing on the analysis, provided that the type of claim is

The clear import of the *McNair* and *Lovett* lines of authority is that, notwithstanding the fact that Arthur seeks prospective relief from an alleged constitutional infringement (the autopsy) that has not been committed yet, his § 1983 cause of action accrues not at the time of the autopsy, but when the facts which would support a cause of action should have been apparent to a person with a reasonably prudent regard for his rights. As discussed *supra*, Arthur's conviction and sentence became final in 1997. Alabama Code § 36-18-2, the Alabama statute governing autopsies, was last amended in 1980, and Arthur has alleged no change in the State of Alabama's application of that statute to executed inmates during the 11 years since his conviction and sentence became final.[8] Thus, it was or should have been quite obvious to Arthur by no later than 1997 that the State of Alabama intended to put him to death and to perform an autopsy on his body after that execution was carried out. Stated differently, upon the completion of direct review of his conviction and sentence in 1997, Arthur became subject to the autopsy policy that he challenges in this lawsuit. Under the clear principles enunciated in *Lovett* and *McNair*, the facts which would support Arthur's cause of action that a post-execution autopsy would violate his First Amendment rights should have been apparent to any person with a reasonably prudent regard for his rights in 1997, when his conviction became final, and not on June 30, 2008, when the Alabama Supreme Court issued its most recent order setting an execution date for him. Therefore, the Court finds that Arthur's § 1983 claim accrued for limitations purposes some 11 years ago, rendering it clearly time-barred.

The second fundamental defect with plaintiff's proposal that an autopsy challenge accrues "when the Supreme Court of Alabama sets an execution date" is that it ignores Arthur's own long history of execution settings. The Court's research establishes that the Supreme Court

---

sufficiently similar for a reasonable analogy to be drawn. The circumstances in *McNair* and *Lovett* are closely analogous to and not meaningfully distinguishable from those presented here, and set forth the framework that the Eleventh Circuit utilizes in evaluating the accrual of § 1983 claims for prospective relief; therefore, those authorities are directly relevant and critically important to the analysis here.

[8]   Indeed, Arthur concedes his information and belief that the State of Alabama "has routinely ordered that an autopsy be performed on condemned prisoners after they are executed by the State." (Complaint, ¶ 16.)

of Alabama first set an execution date for Arthur at least as early as March 23, 2001, with the execution to occur on April 27, 2001.  *Ex parte Arthur*, 821 So.2d 251 (Table) (Ala. 2001); *see also Arthur v. King*, 500 F.3d at 1338.  Thus, even if Arthur is correct that the accrual date for his § 1983 challenge to defendants' autopsy policy equates to the date on which the Supreme Court of Alabama enters an order setting an execution, the inescapable fact is that an execution date was first set for him more than seven years ago.  Even by Arthur's own unsupported proposed legal standard for accrual, then, his § 1983 claims accrued well outside the applicable two-year limitations period.

Inasmuch as Arthur's claims are clearly time-barred, the Court finds that he cannot establish a substantial likelihood of success on the merits, and that his requests for entry of temporary restraining order and preliminary injunction must therefore be **denied**.  *Compare McNair*, 515 F.3d at 1178 ("we conclude the district court abused its discretion by determining Callahan had a significant possibility of success on the merits of his claim when, in fact, the complaint was filed beyond the applicable two-year statute of limitations").

### III.    Conclusion.

For all of the foregoing reasons, Arthur's Application for a Temporary Restraining Order / Motion for a Preliminary Injunction (doc. 5) is **denied** as both dilatory and untimely.  In light of the Court's conclusion that Arthur's Complaint is untimely, as a matter of law, defendants' Motion to Dismiss (doc. 9) is **granted** and this action is **dismissed with prejudice**.  A separate judgment will enter.

DONE and ORDERED this 31st day of July, 2008.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE